UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| MAGNOLIA BANK, INC., | )<br>) |
| PLAINTIFF, | )<br>) *Electronically Filed* |
| v. | )<br>) |
| | ) Civil Action No. 3:18-cv-102-TBR |
| KEIBER MARTINEZ, | )<br>) |
| Serve: Keiber Martinez<br>7011 Black Walnut Circle<br>Louisville, Kentucky 40229 | )<br>)<br>)<br>) |
| DEFENDANT. | )<br>)<br>)<br>) |

## MAGNOLIA BANK, INC.'S VERIFIED COMPLAINT AGAINST MARTINEZ

Plaintiff, Magnolia Bank, Inc. ("Magnolia"), through counsel, files this Complaint against Defendant Keiber Martinez ("Martinez" or "Defendant"), seeking injunctive relief, compensatory damages, punitive damages, and attorney's fees, and states as follows:

### PARTIES

1. Magnolia is a for-profit corporation incorporated in Kentucky that has its principal place of business at 794 Old Elizabethtown Road, P.O. Box 188, Hodgenville, Kentucky 42748.

2. Defendant Martinez is an individual citizen of Kentucky who resides in Louisville, Kentucky.

### JURISDICTION AND VENUE

3. The United States district courts have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

4. The action involves a claim arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, a federal law.

5. The action involves a claim arising under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, a federal law.

6. The action involves state-law claims arising under the laws of the Commonwealth of Kentucky.

7. The Court has supplemental jurisdiction over Magnolia's state-law claims pursuant to 28 U.S.C. § 1367, as the claims derive from a common nucleus of operative facts and are therefore so related to the claims arising under the Computer Fraud and Abuse Act and the Defend Trade Secrets Act that they form part of the same case or controversy.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant is located or resides in the Western District of Kentucky and the transactions giving rise to this case occurred in the Western District of Kentucky.

## FACTUAL ALLEGATIONS

9. Magnolia is a financial institution and Member of the Federal Deposit Insurance Corporation ("FDIC") headquartered in Hodgenville, Larue County, Kentucky. Magnolia has served Kentucky and other parts of the United States since 1919. One of the services it provides to its customers, both within Kentucky and beyond, is mortgage banking services.

10. Defendant Martinez was hired by Magnolia on August 27, 2012, and was currently employed by Magnolia as a Mortgage Analyst in its mortgage banking business.

11. As an employee of Magnolia, Martinez accepted, and was subject to, the policies and provisions set forth in Magnolia's Employee Handbook and Information Security Policy.

12. Magnolia's Employee Handbook and Information Security Policy requires, among other terms, that employees safeguard Magnolia's confidential information; refrain from disclosing Magnolia's confidential information to others outside Magnolia; and refrain from using Magnolia's confidential information for personal gain.

13. Magnolia issued Martinez a company-owned laptop computer to conduct business on behalf of Magnolia. The laptop computer, Magnolia's internal business networks, and Magnolia's external accounts with third party investors and business partners were password protected.

14. Magnolia also gave Martinez access to its confidential and proprietary information, including its customer lists, supplier lists, vendor lists, accounting information, password/ID information, contracts and approval letters with clients of Magnolia, personnel information, trade secrets, and other data in which it has a proprietary interest.

15. Magnolia took reasonable measures to protect its trade secret, confidential, and proprietary information, including restricting access to that information to those with a need to know, and requiring computer username and password protection.

16. Magnolia also took precautions to make sure information could not be accessed or removed from its computers via flash drive or external hardware by disabling the USB ports on its company-owned machines.

17. On February 13, 2018, Magnolia terminated the employment of Martinez, along with several other employees, for his role in a scheme to improperly compete against Magnolia by "lifting out" its mortgage banking business.

18. Martinez was notified of his termination via telephone call from Sarah Quesenberry, Magnolia's Director of Human Resources, at approximately 7:59 a.m. that morning.

19. The day after Martinez's termination, Magnolia's Information Security Officer, Geremy Farmer, obtained the Magnolia laptop assigned to Martinez and used a software program called Active Track to create a diagnostic report specifying each system function, and each file accessed, on February 13 for the laptop Magnolia had assigned to Martinez (the "Tracking Report Summary"). Declaration of Geremy Farmer (attached hereto as Exhibit A), para. 3. A copy of the Tracking Report Summary created by Mr. Farmer is attached as Exhibit 1 to Mr. Farmer's Declaration.

20. As Magnolia's Director of Information Technology and Information Security Officer, Mr. Farmer regularly monitors computer usage by Magnolia's employees pursuant to Magnolia's Information Security and IT Policy. (Farmer Dec. at para. 2). Magnolia employees, including Martinez, must review and agree to this policy via electronic acknowledgment.

21. Roughly twenty-seven minutes after Martinez was advised of his termination, at 8:26:49 a.m., Martinez, without permission, accessed his Magnolia-issued laptop using the local user profile (i.e., not a networked profile). (Farmer Dec. at para. 4, Tracking Report Summary).

22. Upon accessing his Magnolia-issued laptop, Martinez twice attempted to login to Magnolia's internal mortgage department network. However, he was unable to gain access to the system because his user credentials had already been deactivated. (Farmer Dec. at para. 5).

23. Martinez then proceeded to insert a "SanDisk Cruzer Slide" external USB storage device, commonly referred to as a thumb drive, to the USB port of Magnolia's laptop. Through the Windows Start Menu and Program Manager functions, he then accessed and copied the

contents of multiple confidential and proprietary computer files from Magnolia's laptop onto his external USB storage device (reflected on the Tracking Report Summary as the "E: drive"). (Farmer Dec. at para. 6).

24. Martinez intentionally accessed Magnolia's computer and obtained confidential and proprietary information without authorization.

25. Martinez was able to gain access to the USB port of Magnolia's laptop despite Magnolia's security protections and precautions.

26. The computer files copied and taken by Martinez contained Magnolia's client approval letters and contracts since November 2017; various templates and forms used by Magnolia in its mortgage banking business; and a document listing Magnolia's highly confidential login and password information for each of its eleven post-closing investor databases. (Farmer Dec. at para. 7).

27. This information derives independent economic value from not being generally known or readily ascertainable. It was taken by Martinez – after his termination, and without authorization – to assist Martinez's competitive activities against Magnolia.

28. The confidential user IDs and passwords are particularly valuable because they can be used to access extensive information about Magnolia's mortgage customers, clients and vendors that are stored in the third-party web-based databases of Magnolia's post-closing investors. This information is not readily available to Magnolia employees on Magnolia servers.

29. Upon learning of Martinez's unlawful conduct above, Mr. Farmer took steps to secure Magnolia's interests by contacting the third party websites in question and requesting a reset of the passwords. He has not yet been able to reset all of these accounts.

30. Although Magnolia's investigation is ongoing, Martinez had and has unauthorized access to substantial amounts of confidential and proprietary Magnolia loan information stored on Magnolia's post-closing investor's databases. Upon a subsequent review of Martinez's Magnolia email inbox, Mr. Farmer discovered emails from several post-closing sites reflecting that Martinez had unsuccessfully attempted to use the log-in information that had been taken from Magnolia's laptop to gain entry to those sites. (Farmer Dec. at para. 9).

31. As a result of Martinez's wrongful acts, Magnolia has suffered injury and damages, including loss of trade secrets, damages to trade secrets, loss of confidential and proprietary information, loss and/or potential loss of business and harm to its customer relationships.

32. Magnolia has incurred costs to investigate and respond to Martinez's unauthorized computer access, and to assess damages caused to its computers, including the time of its Information Technology Department, administrative time, professional fees, and attorney fees.

33. Such costs exceed $5,000.00 and were incurred by Magnolia within a one-year period.

### COUNT 1—COMPUTER FRAUD AND ABUSE ACT

34. Magnolia incorporates by reference the allegations set forth in Paragraphs 1 through 33 of the Complaint as if fully set forth herein.

35. Magnolia is a financial institution whose business uses computers in interstate and foreign commerce or communication.

36. Magnolia's computers are protected computers within the meaning of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (the "CFAA").

37. Immediately after his termination, Martinez intentionally accessed Magnolia's confidential and proprietary information residing on Magnolia's computers without authorization and transferred that information outside of Magnolia to his own possession, thereby misappropriating valuable, confidential, proprietary, and trade secret information, including Magnolia's client approval letters and contracts since November 2017; various templates and forms used by Magnolia in its mortgage banking business; and a document listing Magnolia's highly confidential login and password information for each of its eleven post-closing investor databases.

38. Martinez's actions caused losses to Magnolia in excess of $5,000.00.

39. Martinez's conduct constitutes a violation of the CFAA. Martinez's conduct has caused and continues to cause Magnolia substantial and immediate irreparable injury, including the actual and potential loss of its mortgage banking business, as well as confidential, proprietary, and trade secret information and monetary damages. Unless enjoined, Martinez will continue to breach his obligations and cause further irreparable injury.

## COUNT II—DEFEND TRADE SECRETS ACT

40. Magnolia incorporates by reference the allegations set forth in Paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41. Magnolia owns and possesses certain confidential, proprietary, and trade secret information, as alleged above, to which Martinez had access by virtue of his employment with Magnolia.

42. To protect its confidential, trade-secret information, Magnolia has taken affirmative measures, including, but not limited to, adopting employee information security

policies, password-protecting company computers, servers, and networks, and limiting outside-the-office network access to senior employees.

43. This confidential, proprietary, trade-secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of this information.

44. In violation of Magnolia's rights, Martinez misappropriated the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein.

45. Martinez's misappropriation of the confidential, proprietary, and trade-secret information was intentional, willful, and malicious.

46. Upon information and belief, if Martinez is not enjoined, Martinez will continue to misappropriate, disclose, and use for his own benefit and to Magnolia's detriment Magnolia's trade secret information.

**COUNT III—UNLAWFUL ACCESS TO A COMPUTER/MISUSE OF COMPUTER INFORMATION IN VIOLATION OF KRS CHAPTER 434**

47. Magnolia incorporates by reference the allegations set forth in Paragraph 1 through 46 of the Complaint as if fully set forth herein.

48. Martinez knowingly and willfully accessed or caused to be accessed Magnolia's computer, computer system, and/or computer network.

49. Martinez did not have Magnolia's consent to access or cause to be accessed its computer, computer system, and/or computer network.

50. Martinez has received and/or used information and documents obtained from Magnolia's computer, computer system, and/or computer network.

51. Martinez's unlawful access to Magnolia's computer, computer system, and/or computer network and his use of documents and information obtained from his unlawful access has resulted in loss and damage to Magnolia.

52. Martinez acted towards Magnolia with oppression and malice, warranting an award of punitive damages.

## COUNT IV—KENTUCKY UNIFORM TRADE SECRETS ACT

53. Magnolia incorporates by reference the allegations set forth in Paragraph 1 through 52 of the Complaint as if fully set forth herein.

54. Magnolia owns and possesses certain confidential, proprietary, and trade secret information, as alleged above, to which Mr. Martinez had access by virtue of his employment with Magnolia.

55. To protect its confidential, trade-secret information, Magnolia has taken affirmative measures, including, but not limited to, adopting employee information security policies, password-protecting company computers, servers, and networks, and limiting outside-the-office network access to senior employees.

56. This confidential, proprietary, trade-secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of this information.

57. In violation of Magnolia's rights, Martinez misappropriated the confidential, proprietary, and trade secret information in the improper and unlawful manner as alleged herein.

58. Martinez's misappropriation of the confidential, proprietary, and trade-secret information was intentional, willful, and malicious.

59. Upon information and belief, if Martinez is not enjoined, Martinez will continue to misappropriate, disclose, and use for his own benefit and to Magnolia's detriment Magnolia's trade secret information.

## COUNT V—CONVERSION

60. Magnolia incorporates by reference the allegations set forth in Paragraphs 1 through 59 of the Complaint as if fully set forth herein.

61. At all relevant times, Magnolia had the right and title to trade secrets and other confidential and proprietary information for its use in its business.

62. Martinez has intentionally exercised dominion and control over Magnolia's property, including its trade secrets and confidential or proprietary information, to divert corporate opportunities and assets.

63. Martinez's actions in misappropriating Magnolia's confidential and proprietary information has unlawfully deprived Magnolia of its property without consent or lawful jurisdiction.

64. Martinez's wrongful actions have harmed and damaged Magnolia.

65. Martinez acted towards Magnolia with oppression and malice, warranting an award of punitive damages.

## COUNT VI—INJUNCTIVE RELIEF

66. Magnolia incorporates by reference the allegations set forth in Paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67. Magnolia has demonstrated a strong likelihood of success on the merits of its claims by submitting evidence that Martinez misappropriated Magnolia's trade secrets in violation of the DTSA and KUTSA.

68.   Magnolia has further demonstrated a strong likelihood of success on the merits of its claims by submitting evidence that Martinez obtained confidential information as a result of his unauthorized access to Magnolia's computer, and that Magnolia has incurred damages and costs in excess of $ 5,000 as a result.

69.   Magnolia will suffer immediate and irreparable injury unless Martinez is preliminary and permanently enjoined from further misappropriation of Magnolia's confidential, proprietary, or trade-secret information.

70.   Magnolia has no adequate remedy at law or otherwise to address this injury, save in a court of equity.

## DEMAND FOR JUDGMENT

**Wherefore**, Magnolia Bank demands judgment against Defendant on the Complaint as follows:

(a)   That Judgment be entered in favor of Plaintiff and against Defendant on all counts in Plaintiff's Verified Complaint;

(b)   That Defendant, and any individuals or entities working in active concert with Defendant, be temporarily and permanently enjoined and restrained from using any information or materials taken from Magnolia, and any information derived therefrom, including any information he may have procured through his unauthorized access to Magnolia's investor databases;

(c)   For an award of compensatory damages on all counts;

(d)   An award of punitive damages on all counts in an amount to be proved at trial;

(e)   An award of exemplary damages pursuant to KRS 365.884(2);

(f)   An award of Magnolia's attorney's fees and costs pursuant to 18 U.S.C. § 1836(b)(3)(D) and/or KRS 365.886;

(g) An award of pre-judgment and post-judgment interest on all counts;

(h) For a trial by jury on all issues so triable;

(i) For an award of all other relief to which Magnolia may be entitled.

/s/Jeffrey A. Calabrese
Culver V. Halliday
Jeffrey A. Calabrese
Amy L. Miles
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, Kentucky  40202
Phone: (502) 333-6000
culver.halliday@skofirm.com
jeff.calabrese@skofirm.com
steven.clark@skofirm.com

*Attorneys for Plaintiff,*
*Magnolia Bank, Inc.*

## VERIFICATION

I, Deena London, declare as follows:

1. I am over the age of 21, am of sound mind, have personal knowledge of the facts stated in this Verification, all of which are true, and am otherwise competent to make this Verification.

2. I am employed as the Chief Operating Officer of Magnolia Bank, Inc. I am familiar with the information security and human resources functions of Magnolia Bank, Inc. I have read the foregoing Verified Complaint. Regarding the allegations of which I have personal knowledge, I know or believe them to be true. Regarding the allegations of which I do not have personal knowledge, I believe them to be true based on my investigation thereof.

I declare under penalty of perjury under the laws of the United States of America that the foregoing statements are true and correct.

_____
Deena London

**FRCP 65(b) CERTIFICATION OF COUNSEL**

I certify that on February 19, 2018, I attempted to provide notice of the Plaintiff Magnolia Bank, Inc.'s Complaint, Motion for Injunctive Relief, and Proposed Temporary Restraining Order to Defendant Keiber Martinez by sending an email with these attached documents and notice of Plaintiff's intent to seek a temporary restraining order on the morning of February 20, 2018 to Defendant at his last known email address, keiber_angulo@hotmail.com.  Notice by the Court should not be required before entering emergency injunctive relief because the delay would compound the irreparable injury incurred by the Bank's business operations and relationships by the ongoing unauthorized access to, and misappropriation of, the confidential business information of the Bank and its customers and clients.

/s/Jeffrey A. Calabrese
Culver V. Halliday
Jeffrey A. Calabrese
Amy L. Miles
STOLL KEENON OGDEN PLLC
500 West Jefferson Street, Suite 2000
Louisville, Kentucky  40202
Phone: (502) 333-6000
culver.halliday@skofirm.com
jeff.calabrese@skofirm.com
steven.clark@skofirm.com

*Attorneys for Plaintiff,*
*Magnolia Bank, Inc.*

115235.146877/1552880.1